UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:06-CV-192-R

LEE ANN BOONE,                                                                    PLAINTIFF

v.

LIBERTY LIFE ASSURANCE COMPANY
OF BOSTON,                                                                        DEFENDANT

## MEMORANDUM OPINION

This matter comes before the Court on the Plaintiff's Brief in support of her claim against the Defendant under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et. seq., regarding a decision by the Defendant to terminate Ms. Lee Ann Boone's ("Ms. Boone"), long-term disability benefits (Docket #10). The Defendant, Liberty Life Assurance Company of Boston ("Liberty") has responded to her brief (Docket #14). This matter is now ripe for adjudication. For the following reasons, the Plaintiff's request for relief is **DENIED**, and the claims against the Defendant are **DISMISSED**.

## BACKGROUND

Ms. Boone, a resident of Calloway County, Kentucky, was formerly employed by the Schering Plough Corporation ("Schering") as a pharmaceutical sales representative. Her job responsibilities included: driving up to four (4) to five (5) hours per day; conducting informational programs two (2) to three (3) hours per day; making sales calls up to eight (8) hours per day; and performing administrative tasks up to five (5) hours per day. In February 2003, Ms. Boone underwent an anterior spinal fusion surgery. However, she continued to experience lower back pain after the procedure, and she was eventually diagnosed with a lumbar spinal fusion as well as lumbar disk disease. In addition, she was diagnosed with a bipolar

disorder by Dr. Clark Harris, MD ("Dr. Harris"), an internal medicine physician.  Ms. Boone's other treating physician was Dr. Mark Crawford, MD ("Dr. Crawford"), and Dr. Steven Alexander ("Dr. Alexander") was her therapist.

Liberty issued the Group Disability Policy ("Policy") in question to Ms. Boone through her employer, and it provides long-term disability benefits to eligible employees.  The Policy states that Liberty  has "sole discretion" to interpret the terms and conditions of the Policy.  The Policy defines "disabled" or "disability" for purposes of long-term disability benefits as: "during the Elimination Period and the next 24 months of Disability the Covered Person is unable to perform all of the material and substantial duties of his occupation on Active Employment basis because of an Injury or Sickness."

In May 2004, her physicians determined that the Plaintiff was unable to perform the physical and mental activities related to her employment.  From June 12, 2004 through January 29, 2005, the Plaintiff applied for and received short-term disability benefits through the Defendant, Liberty.  On November 23, 2004, the Plaintiff applied for long-term disability ("LTD") benefits, and on January 27, 2005, Liberty approved her claim for LTD benefits.  Effective January 11, 2005, Ms. Boone began to receive a monthly disability benefits of $2,673.73.  These payments continued through February 28, 2006.

On April 27, 2005, Liberty requested that the Plaintiff update it on her condition.  Ms. Boone informed Liberty that she had applied for Social Security disability benefits in January 2005, and she was awaiting a hearing.  Ms. Boone also informed Liberty that had lost weight and was attempting to exercise more regularly.  Liberty also received updates from Dr. Harris during that time, regarding her mental capacity.

In August 2005, Liberty requested five (5) days of video surveillance on Ms. Boone to determine her level of activity.  After receiving the video, Liberty requested an independent medical examination ("IME"), which was later conducted by Dr. Emily Rayes-Prince, MD ("Dr. Rayes-Prince").  After spending one (1) hour with the Plaintiff, and one (1) hour reviewing her medical records, Dr. Rayes-Prince opined that the Plaintiff could drive up to four (4) hours of an eight (8) hour workday, with rest breaks every fifty (50) minutes.  In addition, Dr. Rayes-Prince stated that Ms. Boone could not lift or carry anything greater than twenty (20) pounds and that Ms. Boone did not need to recline or lie down during the workday.  Lastly, Dr. Rayes-Prince stated that Ms. Boone could resume an eight (8) hour workday if she made some changes to her treatment.

In December 2005, Liberty requested that Dr. Harris provide comments to Liberty regarding the IME conducted by Dr. Rayes-Prince.  Dr. Harris stated that he felt Ms. Boone would need to change positions frequently and would have to lie down on occasion, contrary to the opinion offered by Dr. Rayes-Prince.  In response, Liberty sought a peer review of Dr. Harris' response by Dr. John R. Ayres, MD ("Dr. Ayres"), a board certified orthopedic surgeon.  Dr. Ayres' examined Ms. Boone's employment and medical history, which included the surveillance tape provided by Liberty.  Dr. Ayres opined that the medical information in the file did support the need for an orthopedic referral for steroid injections combined with physical therapy.  He also opined that Ms. Boone was able to drive from four (4) - six (6) hours per day, limited to 45 - 60 minutes at a time, then rest 10-15 minutes to stretch her back and hips.  In addition, Dr. Ayres stated that Ms. Boone could work a full-time eight (8) hour workday, with medium duty demand level, which includes occasionally lifting up to fifty (50) pounds,

frequently twenty (20) pounds, and lifting ten (10) pounds constantly.

At the same when Dr. Ayres reviewed Ms. Boone's physical condition, Liberty had Dr. Howard Oakes, Psy. D. ("Dr. Oakes") review Ms. Boone's mental condition.  On December 19, 2005, Dr. Oakes concluded that it was not clear that her mental impairments would impede her job performance.  Liberty requested that Dr. Alexander respond to Dr. Oakes' report.  Dr. Alexander responded, stating that Ms. Boone had an ongoing psychiatric impairment, which included a moderate to severe case of major depression.  Dr. Alexander also stated that he could not provide an estimate of a likely return to work date because it would be inappropriate at that time.

On January 16, 2006, Dr. Oakes provided a limited assessment of Ms. Boone's psychiatric condition and limitations based on Dr. Alexander's response.  Dr. Oakes stated that Dr. Alexander's opinion was inconsistent with the prior records he was provided because there was no indication that the Plaintiff's treatment had become more frequent.  Dr. Oakes also noted that Dr. Harris had diagnosed the Plaintiff with a bi-polar disorder, while Dr. Alexander had diagnosed her with depression.  Based on Dr. Oakes' findings, Liberty requested up-dated medical information from Dr. Alexander.  Dr. Alexander responded by providing Liberty with progress notes from consultations with Ms. Boone on November 8, 2005, and January 10, 2006.  Liberty referred these documents to Dr. Oakes, and requested that he add an addendum to his previous reports.

On February 23, 2006, Dr. Oakes opined that because Ms. Boone was not prescribed any psychiatric medication and was only being provided with minimal treatment, her record was not consistent with someone who was experiencing an impairment that would interfere with her job

4

responsibilities.  Dr. Oakes stated that the treatment she was receiving was minimal, thereby

more supportive in nature.  Dr. Oakes also noted that Dr. Alexander was not a licensed

psychologist, but was instead a licensed counselor.  In addition, he attempted to contact Dr.

Alexander twice to discuss Ms. Boone, and both times Dr. Alexander did not get back to Dr.

Oakes.

      After Dr. Oakes and Dr. Ayers issued their reports, Liberty referred the Plaintiff's case to

a Vocational Case Manager ("VCM") to review Ms. Boone's restriction and limitations, and

determine whether she would be able to work within her occupational requirements.  The VCM

determined that Ms. Boone had the ability to perform an occupation within the "light physical

demand" category, which the United States Department of Labor defines as: exerting up to

twenty (20) pounds of light force occasionally, or up to ten (10) pounds of force frequently.  The

VCM ultimately stated that Ms. Boone had the physical capabilities to conduct her job as a sales

representative, basing this conclusion on the report submitted by Dr. Ayres.  Liberty made the

Plaintiff aware of this determination on February 28, 2006, informing Ms. Boone that because

she no longer met the Policy definition of disabled, her long-term disability benefits would be

terminated.

      On March 30, 2006, Ms. Boone appealed her denial of benefits to Liberty.  Liberty

reviewed the appeal, and, on April 21, 2006, sent Ms. Boone a notification that it was upholding

their determination to terminate long-term disability benefits.  At that time, Liberty advised Ms.

Boone that her right for further administrative appeals had been exhausted.

      The Plaintiff filed the instant complaint in November 2006, seeking long-term disability

benefits payable at a rate of $2,673.73 per month for the remainder of the twenty-four (24)

month period (February 2006 - January 2007) as well as any additional benefits entitled to her based on her limitations after that time period.  Further, the Plaintiff also asserts that because she fit within the definition of "disabled" at that time her benefits were cancelled, Liberty breached its fiduciary duty to the Plaintiff, acted in bad faith, and breached its contract.  Therefore, the Plaintiff claims she is entitled to recover not only her lost benefits, but also her attorney fees and costs, as well as pre-judgment and post-judgment interest.

## STANDARD

In *Wilkins v. Baptist Healthcare Systems, Inc.*, the Sixth Circuit Court of Appeals held that § 502(a) actions were not subject to Federal Rule of Civil Procedure 56 motions. *Wilkins v. Baptist Healthcare Systems, Inc.*, 150 F.3d 609, 617 (6th Cir. 1998).  Instead, this Court must conduct a *de novo* review based on the administrative record; it must render findings of fact and conclusions of law, *id.* at 613, 619, unless the benefit plan gives the administrator discretion to determine eligibility or construe the plan's terms, in which case an arbitrary and capricious standard applies.  *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  Here, the Policy grants its administrators such discretion.  Accordingly, the Court shall apply an arbitrary and capricious standard of review.

When applying an arbitrary and capricious standard of review, this Court must determine whether "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome."  *Bartling v. Fruehauf Corp.*, 29 F.3d 1062,1071 (6th Cir. 1994) (citing *Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989)).  If such an explanation is available, this Court must respect the decision of the claims administrator and uphold it.  *Id.* In evaluating those decisions, this Court must consider only the evidence before the

6

administrator at the time, *Daniel v. Eaton Corp.*, 839 F.2d 263, 266-67 (6th Cir. 1988), and must

account for potential conflicts of interest.  *Kulkarni v. Metropolitan Life Ins. Co.*, 187 F. Supp.2d

724, 727 (W.D. Ky. 2001) (citing  *Firestone Tire and Rubber Co., v. Bruch*, 489 U.S. 101, 115

(1989); *Peruzzi v. Summa Medical Plan*, 137 F.3d 431, 433 (6th Cir.1998)).  Lastly, in *Miller v.*

*Met Life Ins. Co.*, the Court states that "[a]n ERISA plan administrator's denial of benefits is not

arbitrary and capricious as long as it is rational in light of the plan's provisions." 925 F.2d 979,

984 (6th Cir. 1991).

### DISCUSSION

Ms. Boone has asserted claims against Liberty under both ERISA and state law.  The

Plaintiff has also requested attorney fees and costs.  The Court shall address each set of claims

separately.

### 1. ERISA Claims

The Plaintiff argues that she is entitled to long-term disability benefits because she fit

within the Policy definition of disabled at that time her benefits were terminated, and therefore,

Liberty acted arbitrarily and capriciously when it made its determination to deny her benefits.

Specifically, the Plaintiff contends Liberty did not conduct a thorough and adequate enough

examination of Ms. Boone because Dr. Rayes-Prince only physically examined her for one(1)

hour, and the remaining doctors relied upon medical records.  The Plaintiff further asserts that

the Defendant failed to consider her mental condition when it made its determination.  Lastly,

Ms. Boone contends that Liberty erred when it evaluated her ability to perform her occupation

based on national economy rather than her specific job duties at Schering.

The Sixth Circuit Court of Appeals, in *Evans v. Unumprovident Corp.*, held that:

> when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision.

*Evans v. Unumprovident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006) (citing *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003). In *Osborne v. Hartford Life & Acc. Ins. Co.*, the Court held that when the insurer employed the Department of Labor's dictionary definition of the occupation of the beneficiary when rendering its decision to terminate benefits, rather than rely on the specific job duties of the beneficiary, the insurer was not arbitrary and capricious. *Osborne v. Hartford Life & Acc. Ins. Co.*, 465 F.3d 296, 298 (6th Cir.2006); *see also Elliott v. Metropolitan Life Ins. Co.*, 473 F.3d 613, 618 n. 4 (6th Cir. 2006).

However, "under the highly deferential 'arbitrary and capricious' standard, we must take into consideration the fact that Liberty is acting under a potential conflict of interest because it is both the decision-maker, determining which claims are covered, and also the payor of those claims." *Smith v. Continental Casualty Co.*, 450 F.3d 253, 260 (citing *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 292 (6th Cir.2005)(citing *Marks v. Newcourt Credit Group*, 342 F.3d 444, 457 (6th Cir.2003)).

In *Calvert*, the Sixth Circuit examined an ERISA case where the beneficiary claimed the insurer acted arbitrarily and capriciously when it cancelled her benefits after physicians hired by the insurer only relied upon on a "pure paper" review of its physicians, but did not conduct a physical examination. *Calvert*, 409 F.3d at 295. The Court stated that "though reliance on a file review does not, standing alone, require the conclusion that Liberty acted improperly, we find

8

that the failure to conduct a physical examination-especially where the right to do so is specifically reserved in the plan-may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." *Id.* The Court ultimately determined that the insurer acted arbitrarily and capriciously in its decision to deny long-term disability benefits because the physician retained by the insurer to review the beneficiary's file made determinations from a mere "file review" on the credibility of the beneficiary and her physicians, without making an in-person examination. *Id.* at 296-97. In further support of its decision that the insurer acted arbitrarily and capriciously, the Court noted that the physician retained by the insurer never addressed "head-on" the conclusions made by the beneficiary's physicians. *Id.* at 297.

Here, in contrast to *Calvert*, the physicians retained by Liberty who examined Ms. Boone in person (Dr. Rayes-Prince) and through a file review (Dr. Ayres & Dr. Oakes), did not make credibility conclusions about Ms. Boone or her physicians, and did address the conclusions reached by the Plaintiff's physicians. Liberty had the physicians it retained not only evaluate Ms. Boone, but also provided an opportunity for her treating physicians to respond to their determinations before making the decision whether to terminate her benefits. In reaching its decision to discontinue her benefits, the VCM assigned to the Plaintiff's case by Liberty relied upon: the medical assessment from Drs. Harris and Alexander (Ms. Boone's treating physician); the IME of Dr. Rayes-Prince, which included a one (1) hour in person evaluation; a peer review by Dr. Ayres, an orthopedic surgeon; a consulting report by Dr. Oakes, a neuropsychologist; and, finally, the review by Liberty's VCM.

In sum, all the physicians who examined the physical condition of Ms. Boone, including Dr. Harris, generally agreed that she could carry and/or lift twenty (20) pounds in increments.

9

Drs. Rayes-Prince and Ayres both determined that Ms. Boone could drive for up to four (4) hours per day for approximately forty-five (45) to sixty (60) minutes at a time, so long as she took fifteen (15) minute breaks to stretch and rest. Liberty took all of this into consideration when it made its decision to discontinue her benefits.

Additionally, Dr. Oakes determined that Ms. Boone's mental condition would not impair her job performance because she was not on medication, and therefore, her therapy was more supportive in nature. Dr. Oakes noted the inconsistency in her medical records because one physician stated that Ms. Boone suffered from a bi-polar disorder while the other physician stated she suffered from depression. Further, Dr. Oakes attempted to contact Dr. Alexander on two (2) occasions to discuss Ms. Boone, and both times Dr. Alexander did not respond to these requests. Ultimately, Dr. Oakes determined that Ms. Boone did not have a psychiatric disorder that would preclude her from performing her occupation.

Based on these evaluations and reports, Liberty concluded that Ms. Boone did not fall within the Policy definition of "Disabled" because based on these findings Liberty found that Ms. Boone did *not* have an inability to perform *all* the material and substantial duties of her occupation as defined by the Policy.[1]

While the opinions of the physicians retained by Liberty differ from Ms. Boone's treating physicians, this in itself does not make the decision to terminate her long-term disability benefits arbitrary and capricious. *See Evans*, 434 F.3d at 877. As noted *supra*, Liberty did not immediately terminate Ms. Boone's benefits upon the IME by Dr. Rayes-Prince, whose findings were counter to Dr. Harris and Dr. Crawford. Liberty permitted Dr. Harris to respond to Dr.

---

[1]The Policy states that someone is disabled if they are "unable to perform ***all*** of the material and substantial duties of his occupation on Active Employment basis because of an Injury or Sickness." (emphasis added).

10

Rayes-Prince's findings, then retained Dr. Ayres to conduct a peer review based on the findings of both of those physicians.  In the end, Dr. Ayres concurred with the opinion of Dr. Rayes-Prince.  The VCM reviewed these analyses and determined that Ms. Boone was no longer "disabled" under there definition within the Policy, and therefore, discontinued her benefits. Consequently, the decision to terminate the long-term benefits of Ms. Boone was both reasonable and rationale in light of the determinations by Drs. Rayes-Prince, Oakes and Ayres, as well as the Policy. *See Evans* at 877; *Miller*, 925 F.2d at 984.

The Court also finds that the decision to evaluate the occupation of Ms. Boone based on Department of Labor definitions rather than her specific job duties at Schering was not improper. *See Osborne*,  465 F.3d at 298.  Accordingly, Liberty did not act arbitrarily and capriciously when it discontinued the long-term disability benefits of Ms. Boone.

## 2. State Law Claims

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).  The United States Supreme Court and Sixth Circuit Court of Appeals have held that under 29 U.S.C. §1144(b), an ERISA action preempts state law claims by beneficiaries who sue for the recovery of benefits in connection with an ERISA plan. *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 737-738 (1985); *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41 (1987) *Daniel v. Eaton Corp.*, 839 F.2d 263, 266-67 (6th Cir. 1988).  "[I]n interpreting ERISA's preemption clause, a court 'must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.'" *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692,

698 (6th Cir. 2005)(hereinafter "*PONI*")(*quoting N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)).

In *Briscoe v. Fine*, the Sixth Circuit Court of Appeals held that "'any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted.'" *Briscoe v. Fine*, 444 F.3d 478, 498 (6th Cir. 2006) (quoting *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 209 (2004)).   In order to determine whether or not a state law claim is preempted by 29 U.S.C. § 1144(a), the Court must find that the claim is "related to" the recovery under the ERISA plan.  In looking at whether a state law claim relates to an ERISA plan, courts should consider "the kind of relief that plaintiffs seek, and its relation to the pension plan." *Ramsey v. Formica Corp.*, 398 F.3d 421, 424 (6th Cir. 2005).

In the instant matter, the Plaintiff states that she is seeking to recover her long term benefits that were denied to her by the Defendant.  The state law claims asserted against Liberty by Ms. Boone seek to recover these benefits, and therefore, amounts to an attempt to circumvent ERISA's civil enforcement mechanism because the claims relate to the recovery of her lost benefits.  As explained *supra*, a Plaintiff may not "duplicate" an ERISA action by asserting a state law claim against a defendant for benefits because ERISA provides the sole remedy for beneficiaries under those circumstances. *See Briscoe*, 444 F.3d at 498.  Accordingly, the state law claims for breach of contract, breach of fiduciary duty and bad faith asserted by the Plaintiff against Liberty are preempted by ERISA.

### 3. Claim for Attorney Fees and Costs

As the Plaintiff is not entitled to relief in this matter, she is not entitled to attorney fees

12

and costs.  The Court has determined that Liberty did not act arbitrarily and capriciously when it made its decision to terminate the long-term benefits to the Plaintiff.  Accordingly, the Plaintiff's request for attorney fees and costs is denied.

**CONCLUSION**

For the foregoing reasons, the Plaintiff's request for relief (Docket #10) is **DENIED**. Accordingly, all claims against the Defendant are **DISMISSED**.

An appropriate order shall issue.